# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 14, 2010

## STATE OF TENNESSEE v. KRYSTAL JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-05737     Paula Skahan, Judge**

---

**No. W2010-00686-CCA-R3-CD  - Filed November 16, 2010**

---

The defendant, Krystal Johnson, pled guilty to criminal attempt to commit aggravated child neglect, a Class B felony.  She received an eight-year sentence as a Range I, standard offender in the Tennessee Department of Correction.  She petitioned the trial court for probation, which the court denied after a hearing.  The defendant now appeals the denial of probation or alternative sentencing.  Specifically, the defendant argues that the trial court (1) did not consider all of the factors enunciated in *Stiller v. State*, 516 S.W.2d 617 (Tenn. 1974) when denying probation; (2) improperly considered that the defendant pled guilty to a Class B felony when the grand jury indicted her for a Class A felony; and (3) did not consider a sentence involving community corrections.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Robert Wilson Jones, District Public Defender; Barry W. Kuhn (on appeal) and Jennifer E. Johnson (at trial), Assistant Public Defenders, Memphis, Tennessee, for the appellant, Krystal Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; and Carrie Shelton, and Scott Bearup, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Background

On September 3, 2009, a Shelby County grand jury indicted the defendant, Krystal Johnson, for aggravated child neglect or endangerment, a Class A felony. On November 23, 2009, the defendant pled guilty, pursuant to a negotiated plea agreement, to the lesser included offense of criminal attempt to commit aggravated child neglect, a Class B felony, in exchange for a recommended sentence of eight years. She stipulated to the following factual basis for the plea:

> [B]etween the dates of April 1, 2008, and February 5, 2009, a four year old female . . . was in the custody of the defendant, . . . [and] received significant wounds and injuries to her body. She had extension cord marks and wounds on her body. She had open sore on her toes that were deep and infected [and also had] the type of pigmentation and dried skin from healing scabs on her body. [The defendant] had explanations for each[, but] a lot of these injuries should have been caught and cared for.

The trial court accepted the plea and sentenced the defendant as a Range I, standard offender to eight years in the Tennessee Department of Correction.

On February 2, 2010, the trial court held an evidentiary hearing on the defendant's petition for probation. At the hearing, the defendant testified that she had four children. Her oldest daughter was in the custody of the daughter's paternal grandmother. The Department of Children's Services ("DCS") removed her second daughter, who was the victim in the present case, from her custody for abandonment and neglect when the daughter was one year old. The defendant took parenting and anger management classes, as well as counseling, and DCS returned custody to her eleven months before the allegations arose in the present case. The defendant testified that she also had two sons, and they lived with her and their father, Antonio Hill. The defendant said that Mr. Hill was responsible for babysitting her daughter while she worked.

According to the defendant, the allegations in this case arose when she took her daughter to the doctor for treatment of sores on her toes and a bruise on her chest. The defendant claimed that she did not see the sores until a couple of days before taking the child to the doctor. When she questioned Mr. Hill about the sores, he said that they came from the child putting her toes in milk crates and that they had been there for a week before the doctor's visit. The defendant said that she learned during her incarceration that the bruise on her daughter's chest occurred when Mr. Hill swung a belt, intending "to give [the child] a whooping" for "drinking out of the toilet," and the child "ran into it." The defendant testified that her daughter had a blister on her head when she took the child to the doctor that came from blow-drying her hair, but she said that any other sores on her daughter's head

occurred after the child left her custody. The defendant explained that the wound on her daughter's stomach came from the child's falling on a broomstick, and the wounds on her back occurred when the child climbed trees. The defendant testified that she did not cause any of her daughter's injuries, but what she did wrong was leaving the child with Mr. Hill. She said that she thought that she could trust him but learned that she could not. The defendant said that Mr. Hill was incarcerated on unrelated charges and, once he was released, could only see their children by court order. The defendant explained that she did not notice her daughter's injuries because of her work schedule and because her daughter wore socks. She said that Mr. Hill was the primary caretaker. The defendant said that she worked for a temporary placement agency, and she had to go to a warehouse every day to apply to work for that day. Additionally, she worked at Burger King from May 2008 until December 2008, and she worked at Checkers for a short period before her arrest.

The defendant further testified that her aunt raised her until she was fourteen. At that time, she went into the state's custody and lived in foster homes and group homes. The defendant testified that she had several siblings but did not know any of them. She wanted to raise her children together. The defendant said that her godmother was willing to support her. She said that she was working towards her GED and taking a course to be a medical assistant. The defendant testified that she would do anything that DCS asked of her in order to get her children back.

On cross-examination, the defendant agreed that she and Mr. Hill were "charge partners" on a theft of property under $500 charge, for which she received judicial diversion. She further agreed that she was convicted for identity theft while on judicial diversion. She received probation in that case, which she violated by picking up the present case. The defendant said that the first time that DCS took custody of her daughter was when she left the child with the child's godmother for two weeks and could not be reached when the child had to go to the hospital. The defendant denied that she was not in contact with the godmother for the whole two weeks. The defendant admitted that her daughter had to get staples in her head from hitting her head on a dresser and that the photographed wounds on her head were in the same places the staples had been.

The defendant testified that she worked two to three days a week, and she "[did] hair on the side" at "different people's houses." She said that she sometimes spent the night after doing someone's hair because she did not have a way to get home. The defendant explained that she went to work at 5:00 a.m. to apply for day labor and would either work during the day for ten to twelve hours or would return to the warehouse later in the evening to work over night. She said that Mr. Hill watched her children when she worked over night, but a daycare center watched them if she worked during the day. The defendant agreed that in 2000, she made an allegation that her aunt abused her, but the allegation was false.

The trial court denied the defendant's petition for probation and/or suspended sentence. In so ruling, the trial court stated:

> You've got prior criminal history as an adult. You've been placed on probation twice. You have violated terms and conditions of probation on two separate occasions by picking up new charges. This is a Class B felony. There is no presumption that you should be placed on probation. The law says you should serve this sentence and with how serious these charges are –
>
> Those children didn't ask to be born. They asked for you to take care of them, and you have not done that. Petition for suspended sentence is denied.
>
> . . . .
>
> I - - I don't want her anywhere near children frankly.

In response to defense counsel's request that the court hear a petition for suspended sentence at some point in the future, the court said,

> I don't want her back here. . . . This is very serious. This is a Class B felony that was reduced . . . from an A felony. It's a much more serious charge what she really did. I don't know how you come home, and you don't check your children [to see] how they are and half of what she said was lies. She wasn't working double shifts most of the time and none of that was in the pre-sentence report.
>
> This is – this is really bad and one way I can prevent her from going back to those children . . . I don't doubt she loves them, but she is completely unable to take care of them.

The defendant filed a timely notice of appeal from the trial court's denial of probation.

**Analysis**

On appeal, the defendant argues that the trial court (1) did not consider all of the factors enunciated in *Stiller v. State*, 516 S.W.2d 617 (Tenn. 1974) when denying probation; (2) improperly considered that the defendant pled guilty to a Class B felony when the grand

jury indicted her for a Class A felony; and (3) did not consider a sentence involving community corrections.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999).

*A. Denial of Probation*

A defendant is eligible for probation if the sentence received by the defendant is ten years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). A defendant with a total effective sentence in excess of ten years is eligible for probation if the individual sentences imposed for the convictions fall within the applicable probation eligibility requirements. *See State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986). A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper, and that full probation will be in the best interest of the defendant and the public. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). The trial court's denial of probation is not subject to appellate review except for an abuse of discretion. *Stiller*, 516 S.W.2d at 620 (Tenn. 1974). A trial court abuses its discretion if there is no substantial evidence in the record to support its conclusion, in light of statutory criteria and decisions of the Tennessee Supreme Court. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Grear*, 568 S.W.2d at 286; *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995); *see also Stiller,* 516 S.W.2d at 620. The trial court should also consider the principles of sentencing outlined in Tennessee Code Annotated section 40-35-103, including the defendant's potential for rehabilitation. The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103. Finally, when a sentence involves confinement, the court should consider the following:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

*Id.*

Probation may be denied based solely upon the circumstances surrounding the offense. *State v. Ring*, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001); *Hartley*, 818 S.W.2d at 374. However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. *Hartley*, 818 S.W.2d at 374-75.

In this case, the defendant was eligible for probation because her negotiated sentence was eight years and her offense is not specifically excluded by statute. The defendant urges this court to find error with the trial court's ruling because the trial court did not enunciate a "full and careful consideration" of the factors listed in *Stiller*, which were repeated in *Grear*. However, this court may only overturn a trial court's denial of probation if there is no substantial evidence on the record to support the denial. *Grear*, 568 S.W.2d at 286. Here, there is ample evidence to support the trial court's denial of probation, which was based on the defendant's prior criminal history, especially the fact that she twice violated probation; her lack of potential for rehabilitation, as evidenced by her lack of candor in her testimony and her probation violations; and the seriousness of the offense.

The defendant argues that the trial court erred by considering the fact that the plea agreement reduced the offense from a Class A felony to a Class B felony. In *Mattino v. State*, a panel of this court reasoned that a trial court's reliance on the circumstances of a defendant's conviction, such as pleading guilty to a lesser offense, might be an abuse of discretion when that is the sole reason for denying probation. *Mattino*, 539 S.W.2d. 824, 828 (Tenn. Crim. App. 1976). In this case, the trial court merely mentioned the reduction of the original charge when replying to the defense counsel's request that the trial court consider an additional petition for suspended sentence sometime in the future. The trial court had already denied probation; therefore, the reduction was not the trial court's sole consideration

nor, indeed, a consideration at all in the trial court's decision. The defendant has not shown that the trial court abused its discretion in denying probation. Therefore, we conclude that the defendant is without relief on this issue.

*B. Community Corrections*

The defendant contends that the trial court erred by denying an alternative sentence under the Community Corrections Act of 1985. However, nothing in the record indicates that the defendant requested such a sentence before the trial court. The trial court held a hearing specifically to address the defendant's petition for a suspended sentence, and the defendant did not present an argument that she should receive community corrections. On appeal, the defendant argues that she meets the eligibility requirements under Tennessee Code Annotated section 40-36-106(a)(1)-(6). The Act does not provide that all offenders who meet these requirements are entitled to such relief. *State v. Grandberry*, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990). Indeed, section 40-36-106(d) provides that the eligibility criteria shall be interpreted as minimum standards to guide the court's determination of eligibility of offenders under the Act. The state agrees that the defendant meets the minimum standards but argues that the trial court's reasoning for the denial of probation applies to a denial of a sentence involving community corrections. We agree with the state.

In this case, the defendant is not a favorable candidate for a sentence involving community corrections because she was convicted of a Class B felony.[1] The defendant does not present any argument in favor of a community corrections sentence other than that she meets the minimum requirements set forth in Tennessee Code Annotated section 40-36-106(a)(1)-(6). The trial court denied probation because of the defendant's criminal history, lack of candor, previous probation violations, and the seriousness of the offense. Those same reasons justify denial of a sentence involving community corrections. After a *de novo* review of the record, we conclude that the defendant has not carried her burden of showing that she is a worthy candidate for community corrections.

**Conclusion**

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE

---

[1] An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).